UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARINA DEL REY, INC.

Plaintiff,

v.

SUMMA LOGISTICS CORPORATION,

Defendant.

Civil Action No. 23-21335 (RK) (JTQ)

**MEMORANDUM OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Plaintiff Marina Del Rey, Inc.'s ("Plaintiff") Motion for Default Judgment against Summa Logistics Corporation ("Defendant"). (ECF No. 12.) The Court has considered Plaintiff's Motion and its accompanying submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion is **GRANTED.**

## I.    BACKGROUND

    Plaintiff is a Canadian corporation which supplies frozen seafood to supermarket chains, warehouses, and club stores. ("Compl.," ECF No. 1 ¶¶ 1–2.) Plaintiff is organized under the laws of the Province of Quebec, Canada with a principal place of business in Laval, Quebec. (*Id.* ¶ 1.) Defendant is a motor carrier which provides interstate cargo shipping services and is a New Jersey corporation organized and existing under the laws of the of New Jersey. (*Id.* ¶¶ 3–4.) Defendant's principal place of business is located in East Windsor, New Jersey. (*Id.* ¶ 4.)

    On or around March 21, 2022, Plaintiff entered an agreement with non-party Total Quality Logistics, LLC. ("TQL"). (*Id.* ¶ 9.) Under this agreement, TQL would provide logistical services to Plaintiff for the transport of approximately 38,835 pounds of frozen shrimp owned by Plaintiff

with a retail value "exceeding $180,000". (*Id.*) Plaintiff required the shipment of frozen shrimp to be transported from a warehouse in Staten Island, New York to a warehouse in Franklin, Indiana where it would be inspected by representatives from The Kroger Co. ("Kroger"), a national supermarket chain, who intended to purchase the frozen shrimp. (*Id.* ¶¶ 10–12.) Upon information and belief, TQL entered a contract with Defendant for transportation and delivery of the shrimp. (*Id.* ¶ 11.) Plaintiff alleges it is the third-party beneficiary of that contract as the owner and seller of the shrimp. (*Id.* ¶ 55.)

Since frozen shrimp are perishable, the shipment of shrimp was required to be refrigerated at all times at a temperature of -22 °Celsius (or -7.6 °Fahrenheit). (*Id.* ¶ 13.) The frozen shrimp were to be transported to Indiana in a refrigerated unit known as a "Reefer" that maintains the items inside at a specific temperature. (*Id.* ¶ 14.) The Reefer was to be powered by a "genset," a generator equipped in a truck to ensure the shipments inside maintain the correct temperature. (*Id.* ¶¶ 15-16.) Defendant took possession of the shipment of frozen shrimp at the correct temperature on or around July 8, 2022. (*Id.* ¶¶ 17, 20.) The shipment of frozen shrimp was then picked up from the Howland Hook Marine Terminal on Staten Island on or around July 14, 2022 by a truck equipped with a genset to power the Reefer. (*Id.* ¶ 15.) At the time Defendant received the shipment, it was refrigerated at the correct temperature of -22 °Celsius (or -7.6 °Fahrenheit. (*Id.* ¶ 17.) The scheduled delivery date for the shipment was July 19, 2022. (*Id.* ¶ 18.)

For the time period during which the shipment was in Defendant's possession, Defendant was responsible for ensuring the Reefer maintained the correct temperature and the genset had sufficient fuel to keep running and powering the Reefer. (*Id.* ¶ 19.) Upon attempted delivery on July 19, 2022 in Franklin, Indiana, Kroger refused delivery of the shipment "due to signs of temperature abuse." (*Id.* ¶ 21.) The Kroger inspectors found the frozen shrimp had been stored at

-4.167 °Celsius (or 24.5 °Fahrenheit) which Plaintiff alleges was "well above the required temperature." (*Id.* ¶ 22 (citing Ex. A).) Kroger found outward signs that the shrimp had thawed, including "crystallization in the sample bag and a large block of ice in the Reefer's tail end." (*Id.* ¶ 23 (citing Ex. B).) Further, the shrimp in the shipment could be "easily pressed when touched" which indicates thawing. (*Id.* ¶ 25 (citing Ex. A).) Plaintiff alleges that a "large amount of ice in the tail end of a [R]eefer illustrates a malfunction in the refrigerant or cooling units." (*Id.* ¶ 24.) Kroger inspectors photographed the shipment at the time of inspection, which showed that the Reefer was not set at the correct temperature. (*Id.* ¶ 36.)

Plaintiff contracted for third-party testing of the shrimp, which found no signs of contamination. (*Id.* ¶¶ 26–28.) Plaintiff then submitted the shipment for reinspection on or around August 8, 2022. (*Id.* ¶ 28 (citing Ex. D).) This request was rejected by Kroger because its product specifications mandate automatic rejection of frozen shrimp where the temperatures of samples taken exceed -12.222 Celsius (or 10 Fahrenheit) regardless of contamination results. (*Id.* ¶ 30 (citing Ex. A).) The sample Kroger took of the shipment was -4.167 °Celsius (or 24.5 °Fahrenheit). (*Id.* ¶ 29 (citing Ex. A).)

Following Kroger's rejection of the reinspection request, Plaintiff arranged for the transport of the shrimp shipment to Canada where it arranged to sell the product at a loss to Canadian purchasers. (*Id.* ¶ 31.) Plaintiff submitted a loss claim to TQL in an attempt to recover its damages through its contract with TQL. (*Id.* ¶ 32.) TQL subsequently denied the claim on the basis that "there is nothing to show a genset malfunction so therefore nothing to support carrier negligence." (*Id.* ¶¶ 33–34 (citing Ex. F).). Plaintiff alleges the denial was improper. (*Id.*) Plaintiff alleges that according to photographs taken by Kroger inspectors on the intended date of delivery, the Reefer was not at the correct temperature at the time of inspection. (*Id.* ¶ 36 (citing Ex. H).).

Plaintiff further alleges that when Defendant picked up the Reefer in Staten Island, records showed the Reefer was set to the correct temperature of -22 °Celsius (or -4 °Fahrenheit). (*Id.* ¶ 35 (citing Ex. G).) Plaintiff alleges the record therefore shows that "the only logical explanation is that the temperature abuse was due to negligence on Summa's part – either due to a failure of equipment, driver error, oversight, or sabotage." (*Id.* ¶ 37.) Plaintiff further alleges that TQL employee communications show Defendant knew or ought to have known the correct temperature at which the shrimp needed to be transported. (*Id.* ¶ 39 (Ex. I).)[1]

Overall, Plaintiff alleges Defendant would have seen the temperature reader on the genset upon pickup. (*Id.* ¶ 41.) Plaintiff alleges the shipment was in good condition upon pickup in Staten Island, and damaged upon delivery. (*Id.* ¶ 47.) Plaintiff furthermore alleges Defendant did not correct "false information relied upon by its insurer to deny" Plaintiff's claim, and should never have accepted the shipment if it was not competent in transporting refrigerated food. (*Id.* ¶¶ 42–44.)

Plaintiff filed the Complaint on October 20, 2023. (*See* Compl.) Plaintiff brings claims for damages under the Carmack Amendment, breach of contract, and negligence. (Id. ¶¶ 45–52.) Plaintiff filed Proof of Service on December 18, 2023 stating the summons was served on November 20, 2023. (ECF. No. 8; ECF No. 9 ¶ 3.) No counsel for Defendant ever entered an appearance in this matter and Defendant has not otherwise participated. Plaintiff sought an entry of default against Defendant on December 22, 2023. (*See* ECF No. 9.) On December 26, 2023, the Clerk of the Court entered an Entry of Default against Defendants. On June 14, 2024, Plaintiff filed the pending Motion for Default Judgment. (ECF No. 12.) Plaintiff's Motion is accompanied

---

[1] Plaintiff attaches and incorporates an email chain sent between TQL and Plaintiff regarding TQL's denial of the loss claim. (Ex. F.)

by a Brief in Support of the Motion, ("Mot.," ECF No. 12-1), as well as a declaration from John P. Fazzio, Esq., (ECF No. 12-2), and an Affidavit in Support of the Motion, (ECF No. 12-3.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a party to apply for and the Court to enter default judgment against a party that fails to plead or otherwise defend claims asserted against it. Fed0. R. Civ. P. 55(b)(2). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits . . . .'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)). "Because the entry of a default judgment prevents the resolution of claims on the merits, '[the Third Circuit] does not favor entry of defaults and default judgments.'" *Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Before entering default judgment, "a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages." *Days Inns Worldwide, Inc. v. T.J. LLC*, No. 16-8193, 2017 WL 935443, at *2 (D.N.J. Mar. 9, 2017) (internal citations omitted). In addition, "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (internal citations omitted).

## III.    <u>DISCUSSION</u>

### A.    SERVICE AND JURISDICTION

The Court begins with the question of whether Defendant was properly served in this matter. A court may only enter default judgment against defendants who were properly served with process. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). Plaintiff "bears the burden of proof on that issue." *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993) (citing 4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1083 (2d ed. 1987)).

Plaintiff can meet this burden "by a preponderance of the evidence using affidavits, depositions, and oral testimony." *Mills v. Ethicon*, 406 F. Supp. 3d 363, 392 (D.N.J. 2019). Federal Rule of Civil Procedure 4 lays out how a defendant may be served with process. When located in the United States, an entity defendant, such as a corporation or LLC, may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B).

Plaintiff has proven by a preponderance of the evidence that Defendant was served with process here, as Defendant's owner and authorized representative Edwin Ramirez was served at the address listed as the Corporation's principal place of business on November 20, 2023. (ECF No. 8; ECF No. 9 ¶ 3.) Since being served, Defendant has not filed an appearance, answered the Complaint, or otherwise engaged in this litigation via counsel or otherwise. Thus, the threshold inquiry for entering default judgment is satisfied here. *See Loc. 365 Pension Fund*, No. 20-10536, 2021 WL 1976700, at *3 (citing *Gold Kist, Inc.*, 756 F.2d at 18–19).

Next, the Court will address its jurisdiction over this matter and the Defendant. "Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *Werremeyer v. Shinewide Shoes, Ltd.*, Civ. No. 19-10228, 2023 WL 6318068, at *2 (D.N.J. Sept. 28, 2023) (citations omitted). Here, the Court has subject matter jurisdiction over the Complaint, which alleges strict liability under the Carmack Amendment for a value over $10,000. The Court's subject matter jurisdiction over such claims is well established. *See* 28 U.S.C. §§ 1331, 1337(a) ("The district courts shall have original jurisdiction ... of an action brought under section . . . 14706 of title 49, [commonly referred to as the 'Carmack Amendment,'] only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interests and costs.") "A civil action under the Carmack Amendment 'may be brought against a delivering carrier in a district court of the United States,' or 'against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred.'" *HDI Glob. Ins. Co. v. Nationwide Auto Carrier, LLC*, No. 23-01236, 2024 WL 184507, at *2 (D.N.J. Jan. 17, 2024) (citing 49 U.S.C. §§ 14706(d)(1)-(2)). The term "carrier" includes a "motor carrier," or "a person providing motor vehicle transportation for compensation." *Id.* (citing 49 U.S.C. §§ 13102(3), (14)).

Defendant is a delivering carrier. Upon information and belief, Defendant "holds itself out to the public as a competent motor carrier, providing interstate cargo shipping services[,]" (Compl. ¶ 4.), and Defendant is alleged to have transported the frozen shrimp at issue in interstate commerce. (*Id.* ¶¶ 11, 15, 21.) Plaintiff alleges that Defendant caused the damages incurred to the frozen shrimp, which were rejected as being thawed upon reaching Kroger's inspectors in Indiana. (*Id.* ¶ 23.) Further, the matter in controversy requirement is satisfied as the matter in controversy, excluding prejudgment interest and costs, here is $97,663.44, thus exceeding the $10,000 statutory

threshold. (Mot. at 8.) Accordingly, the Court has subject matter jurisdiction.

The Carmack Amendment preempts Plaintiff's state law claims, and therefore if the Carmack Amendment applies there is no need for the Court to look further for subject matter jurisdiction. *See Certain Underwriters at Int. at Lloyds of London v. United Parcel Serv. of Am., Inc.*, 762 F.3d 332, 337 (3d Cir. 2014). Notwithstanding, the Court finds that it would also have diversity jurisdiction over Plaintiff's state law claims even if the Carmack Amendment did not apply. Under 28 U.S.C. §§ 1332(a) "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens . . . of a State and citizens or subjects of a foreign state." As Plaintiff is a Canadian corporation with a principal place of business outside the United States, and Defendant is a New Jersey corporation, and Plaintiff seeks damages over $75,000, the Court finds that it would have subject matter jurisdiction over Plaintiff's state law claims independent of its claim under the Carmack Amendment. *See, e.g., G.B. v. Jade Nails Hair Spa*, No. 19-06093, 2021 WL 4149146, at *2 (E.D. Pa. Sept. 13, 2021) (finding subject matter jurisdiction for the purposes of a default judgment motion based on diverse citizenship and claims for damages over $75,000, with the final amount to be proved at trial).

The Court also has personal jurisdiction over the Defendant, a New Jersey corporation. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

### B.    SUFFICIENCY OF COMPLAINT

Before entering default judgment, the Court must determine whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (quoting *Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1

(D.N.J. Mar. 14, 2006)); *see also Animal Science Prods., Inc. v. China Nat'l Metals & Minerals Import & Export Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) ("[A] litigant's failure to state a claim upon which relief may be granted . . . prevents the presiding court from entering a default judgment."). Similar to what is required of a complaint to survive a motion to dismiss for failure to state a claim, a plaintiff must "establish[] that the essential elements of the pleaded claims are present and state[] factual allegations in support of these elements." *Animal Science Prods., Inc.*, 596 F. Supp. 2d at 849. The Court must generally take all facts as alleged by Plaintiff as true. *See Directv, Inc.*, 2006 WL 680533, at *1 ("A defendant is deemed to have admitted the factual allegations of the Complaint by virtue of his default, except those factual allegations related to the amount of damages"). In this case, the facts as alleged support Defendant's liability under the Carmack Amendment.

Plaintiff seeks relief under the under the strict liability provision of the Carmack Amendment. (Mot. at 6.) The Carmack Amendment was enacted in 1906 as an amendment to the Interstate Commerce Act, 24 Stat. 379. *See Adams Express Co. v. Croninger*, 226 U.S. 491, 503–06 (1913). The Carmack Amendment "establishes a uniform federal standard governing 'liability for loss, damage, or injury to goods while in interstate transit.'" *HDI Glob. Ins. Co.*, 2024 WL 184507, at *4 (quoting *AMG Res. Corp. v. Wooster Motor Ways, Inc.*, 796 F. App'x 96, 98 (3d Cir. 2020). The type of loss Plaintiff alleges, *i.e.* damage caused to foodstuffs due to improper handling, falls within the purview of the Carmack Amendment. *See Hartford Fire Ins. Co. v. Dynamic Worldwide Logistics, Inc.*, No. 17-553, 2017 WL 3868702, at *2 (D.N.J. Sept. 5, 2017) ("The Carmack Amendment . . . 'provides for the liability of interstate carriers for damage to . . . goods transported.'") (quoting *Phoenix Ins. Co., Ltd. v. Norfolk S. R.R. Corp.*, No. 11–00398, 2014 WL 2008958, at *6 (D.N.J. May 16, 2014)). Accepting the facts in Plaintiff's

Complaint as true, Plaintiff has sufficiently met the threshold for a *prima facie* case under the Carmack Amendment.[2]

To establish a *prima facie* claim under the Carmack Amendment, Plaintiff must allege "(1) delivery of the goods to the initial carrier in good condition, (2) damage to the goods before delivery to final destination, and (3) the amount of the damages." *Mrs. Ressler's Food Prod. v. KZY Logistics LLC*, 675 F. App'x 136, 140 (3d Cir. 2017); *see also Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003). The burden then "shifts to the carrier to provide it was not negligent and the damage was cause entirely by '[an] act of God[,] ... the public enemy[,] ... the act of the shipper [itself,] ... public authority[,] ... or the inherent vice or nature of the goods.'" *Paper Magic Grp.*, 318 F.3d at 461 (quoting *Beta Spawn, Inc. v. FFE Trans. Serv., Inc.*, 250 F.3d 218, 226 (3d Cir.2001)).

As a preliminary matter, the Court notes that Plaintiff has standing to recover from the carrier under the Carmack Amendment as the entity entitled to recover under the receipt or bill of lading. *See* 49 U.S.C.A. § 14706; *see also Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). Turning now to the first element of a *prima facie* claim under the Carmack Amendment, and taking Plaintiff's allegations as true, Plaintiff has sufficiently shown that the goods were delivered to the shipper in good condition by alleging the Reefer was set at the proper temperature upon pickup from Staten Island. (Compl. ¶¶ 35, 47.) Turning to the next element,

---

[2] As noted above, Plaintiff's Complaint brings claims under the Carmack Amendment, breach of contract, and negligence. (*See* Compl.) In the Motion before the Court, Plaintiff acknowledges that if the Carmack Amendment applies, it entirely preempts Plaintiff's state law claims. (Mot. at 1 n.1.) "Because the Carmack Amendment 'completely occupie[s] the field of interstate shipping,' the law carries an 'exceedingly broad' preemptive force — 'broad enough to embrace all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation.'" *HDI Glob. Ins. Co.*, 2024 WL 184507, at *4 (quoting *Certain Underwriters*, 762 F.3d at 335)). In the present motion, Plaintiff solely seeks relief under the Carmack Amendment, while preserving the right to pursue its additional claims of negligence and breach of contract to the extent this Court finds the Carmack Amendment does not apply. (Mot. at 1.)

Plaintiff has sufficiently alleged the goods were damaged before arrival at the Kroger's inspection in Indiana, causing Kroger's to reject it in its entirety, by reiterating the Kroger inspector's findings upon arrival regarding the visual and physical evidence of the frozen shrimp's thawing, as well as the incorrect temperature of the Reefer upon arrival in Indiana. (*Id.* ¶¶ 21–25; 48.) Plaintiff has also submitted evidence to the Court attached to the Complaint showing that the refrigeration device's temperature was set correctly upon pickup, and that, when the frozen shrimp was delivered, the Reefer was at an incorrect temperature above the prescribed limits required by the Plaintiff and Kroger. (Compl. ¶¶ 13-14, 17, 19–22, 37–38; Exs. G, H.)

Turning to the third element, Plaintiff has sufficiently alleged its amount of actual damages. (Compl. ¶¶ 50, 51, 61,62; Mot. at 7.) Under the Carmack Agreement, the measure of damages in the event that goods are damaged or delivery is delayed is "the difference between the market value of goods at the time of delivery, and the time when they should have been delivered." *Paper Magic Grp.*, 318 F.3d at 461; *see also Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 933 (7th Cir. 2003) (finding a shipper can recover "all damages resulting from" the carrier's negligence but "cannot recover more than the injury suffered") (internal citations omitted). Plaintiff submitted a supporting affidavit and invoices demonstrating that after mitigating its damages through testing, reshipping, repackaging the shrimp, and selling it to alternative purchasers at a lower cost, it incurred $97.663.44 in actual damages. (Mot. at 7; ECF No. 12-3 (Exs. A–U).)

As such, the Court finds Plaintiff has sufficiently established its claims under the Carmack Amendment, and moves towards consideration of the factors weighing for or against default judgment.

## C.    DEFAULT JUDGMENT FACTORS

"Before imposing the extreme sanction of default [judgment], district courts must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). The Court finds that each of these three factors weighs in favor of entering default judgment here.

First, the Court's review of the law and the facts alleged in the Complaint indicates no meritorious defense available to Defendant. Of course, "evaluation of the first factor is made difficult by defendants' failure to answer or to oppose the motion for default judgment." *Loc. 365 Pension Fund*, 2021 WL 1976700, at *3; *see also Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, No. 15-5343, 2017 WL 11491955, at *3 (D.N.J. Nov. 28, 2017) (awarding default judgment on a Carmack Amendment claim where defendant "failed to participate in the case in any way"); *Paganini Foods, LLC v. A & A Fumbah Trucking, Inc.*, No. 10-5444, 2012 WL 194093, at *2 (D.N.J. Jan. 23, 2012) (granting default judgment on a Carmack Amendment claim where upon delivery perishable foodstuffs were discovered to be damaged because of elevated temperatures inside the truck). Based upon plaintiff's uncontested allegations in its complaint, defendant failed to maintain adequate temperatures within the container, damaging the frozen shrimp while in transit. As set forth above, Defendant's liability is established.

The second and third factors also weigh in favor of granting default judgment. Defendant was properly served but failed to engage in the litigation in any way. "It is clear that the plaintiff[] [has] been prejudiced by this dereliction because [it has] been 'prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion.'" *Loc. 365 Pension Fund*,

2021 WL 1976700, at *5 (quoting *Teamsters Pension Fund of Phila. & Vicinity*, 2011 WL 4729023, at *4); *see also Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) ("[Plaintiff] will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm caused by Defendant."). Here, like in the Carmack Amendment claim granted in *Tryg Insurance*, "Defendant failed to raise any defenses for the Court's consideration because Defendant failed to respond." 2017 WL 11491955, at *3; *see also Paganini Foods*, 2012 WL 194093, at *2 (same). Furthermore, "there is nothing before the Court to show that the Defendant['s] failure to file an answer was not willfully negligent." *Teamsters Pension Fund of Phila. & Vicinity*, 2011 WL 4729023, at *4 (citing *Prudential Ins. Co. of America v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009)); *see also Lansford–Coaldale Joint Water Authority v. Tonolli Corp.*, 4 F.3d 1209, 1226 (3d Cir.1993) ("[W]hen a party fails to respond to a complaint, it is deemed to have admitted all the allegations in the complaint.").

In short, Defendant's failure to engage in the litigation prejudices Plaintiff by preventing it from pursuing its legal remedies through the judicial process and consequently, for the reasons stated herein, the entering of default judgment is appropriate.

### D. REMEDIES

Finding default judgment warranted, the Court turns to the issue of damages. As noted above, while the factual allegations of a complaint are taken as true on a motion for default judgment, a plaintiff must prove the amount of damages with certainty. *Comdyne*, 908 F.2d at 1149. In order to determine whether a plaintiff has sufficiently proven damages, Rule 55(b) permits the Court to "conduct such hearings or order such references as it deems necessary and proper." *Id.* (quoting Fed. R. Civ. P. 55(b)(2)). However, the Court is not required to conduct such hearings

"as long as it ensures that there is a basis for the damages specified in the default judgment," *Trucking Emps. of North Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-2782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (citation and quotation marks omitted), such as when "detailed affidavits and documentary evidence" have been submitted to support the plaintiff's claim for damages. *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2–*3 (D.N.J. July 17, 2013) (citation omitted); *see also Comdyne*, 908 F.2d 1142 at 1149 (citation omitted) (damages sought at default judgment should be for a "sum certain or for a sum which can by computation be made certain . . . .").

In support of its damages claim, Plaintiff has submitted to the Court: an affidavit from Herschel Lowy, Plaintiff's Chief Operating Officer, detailing Plaintiff's damages; an invoice showing the amount paid by Plaintiff for purchase of the frozen shrimp; Plaintiff's invoice to Kroger showing the contemporaneous sale price of the frozen shrimp; invoices showing the price at which Plaintiff was able to re-sell the damaged shrimp; and a list of total fees incurred due to the damaged shrimp. (ECF No. 12-3 ¶¶ 5,7, 27–32.) The Court finds that Plaintiff has submitted sufficient evidence to support its damages claim, which includes compensatory damages and Plaintiff's mitigation efforts, resulting in a total loss of $97,633.44. (*See generally* Mot.; ECF No. 12-3 ¶¶ 7, 30, 31.)

Further, Plaintiff has sufficiently shown a basis for prejudgment interest from the date of loss on July 19, 2022 to the date of the Order accompanying this Opinion. *See Pets Glob., Inc. v. M2 Logistics, Inc.*, No. 18-01256, 2020 WL 6381453, at *4 (M.D. Pa. Oct. 30, 2020) (awarding prejudgment interest at a rate of six percent on a Carmack Amendment claim); *see also Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, No. 00-5590, 2001 WL 1003052, at *5 (E.D. Pa. Aug. 29, 2001), *aff'd*, 318 F.3d 458 (3d Cir. 2003) (same); *see also Atl. Mut. Ins. Co. v. Napa Transp.*,

*Inc.*, 399 F. Supp. 2d 523, 525 (S.D.N.Y. 2005), *aff'd*, 201 F. App'x 19 (2d Cir. 2006) (awarding prejudgment interest on a Carmack Amendment claim relating back to the date of loss).

The Court has discretion to determine the rate of prejudgment interest. *See Pets Glob., Inc.*, 2020 WL 6381453, at \*4; *see also Paper Magic Grp.*, 2001 WL 1003052, at \*5 ("Where, as here, the governing federal statute is without a clear directive on prejudgment interest, it is within the trial court's broad discretion to decide whether to award prejudgment interest."). "An award of prejudgment interest serves to account for the possible loss that monies owed would have presumably earned." *Tryg Ins.*, 2018 WL 4146601, at \*1 (citing *Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 284 (3d Cir. 1995)). Here, as in *Tryg Insurance*, "[t]he Court is satisfied that awarding prejudgment interest is appropriate in this case." *Id.* Therefore, "the question before the Court is the proper calculation of interest." *Id.; see also Kent v. Britton*, No. 22-02845, 2023 WL 5277862, at \*5 (D.N.J. Aug. 16, 2023) ("While prejudgment interest is awarded in order to indemnify the claimant for the loss of what the moneys due him would presumably have earned if the payment had not been delayed, . . . the rate of pre-judgment interest is committed to discretion of the district court.") (internal citations and punctuation omitted).

Plaintiff contends the rate should be calculated at a rate of 4.8% compounded annually, keyed to the average 1-year treasury yield for period from the date of loss until its filing of the present motion. (Mot. at 8 (citing *Paganini Foods, LLC v. A & A Fumbah Trucking, Inc.*, No. 10-5444, 2012 WL 194093, at \*2 n.4 (D.N.J. Jan. 23, 2012)).) Plaintiff argues such a calculation comports with the statutory rate set forth in 28 U.S.C. § 1961 for post-judgment interest, which courts have awarded in Carmack Amendment cases. (*Id.*)

The Court finds it appropriate to rely on the average of the 1-year treasury yield rate in keeping with the statutory amount set by 28 U.S.C. § 1961 from the date of loss through the date

of this judgment. *See St. Paul Fire & Marine Ins. Co. v. AVH Trucking LLC*, No. 07-4802, 2008 WL 4601771, at *5 (D.N.J. Oct. 15, 2008) (calculating pre-judgment interest in a Carmack Amendment case "at a rate equal to the weekly average 1–year constant maturity Treasury yield"); *Thorner v. Sony Computer Ent. Am. LLC*, No. 09-1894, 2014 WL 4054127, at *4 (D.N.J. Aug. 14, 2014) (exercising the district court's discretion "to utilize the modest rate set forth in 28 U.S.C. § 1961 for ease of calculation and in the interest of justice."). Using the information provided by the Board of Governors for the Federal Reserve to calculate the appropriate interest rate, the Court therefore awards the average 1-year Treasury yield rate from the date of loss to the week preceding this judgment at a rate of 4.29%, compounded annually.[3]

Finally, the Court awards the costs of the filing fee and the fee related to service of process under Rule 54(d)(1) for a total of $776.33. *See St. Paul Fire*, 2008 WL 4601771, at *5 ("[C]osts other than attorneys fees should be allowed to the prevailing party on a motion for default judgment.")[4] The total damages are $97,633.44 of compensatory damages, plus $776.33 of costs as set forth in the accompanying Order. Plaintiff is directed to provide the Court with a proposed final judgment including all accrued prejudgment interest on Plaintiff's compensatory damages no later than 10 days from the date this Opinion and its accompanying Order are filed.

---

[3] Board of Governors of the Federal Reserve System (US), *Market Yield on U.S. Treasury Securities at 1-Year Constant Maturity, Quoted on an Investment Basis [DGS1]*, retrieved from FRED, Federal Reserve Bank of St. Louis (Oct. 29, 2024), https://fred.stlouisfed.org/series/DGS1. Last accessed October 29, 2024.
[4] While Plaintiff noted its request for post-judgment interest in its Motion, it makes no argument or reference to an authority that would support this relief and did not provide a proposed rate in support of its request. (Mot. at 1, 10.)

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Default Judgment is **GRANTED**.

An appropriate Order accompanies this Opinion.

_____

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: October 31, 2024